[Decided June 29, 1893.]

## Re ASSIGNMENT OF PENDLETON HARD-WARE CO.

[S. C. 33 Pac. Rep. 544.]

1. ASSIGNMENT FOR CREDITORS — CORPORATIONS — ULTRA VIRES.— The fact that a corporation was not by its articles authorized to deal in a certain kind of property, will not justify it in refusing to pay for the same on the ground that the purchase was *ultra vires*, where there is no special prohibition against the purchase, and the goods are retained.   A general assignee is subject to the same duties and obligations as his assignor in this regard, and if he retains the property so purchased he must pay for it.

2. CORPORATIONS — PROMISSORY NOTE — CLAIM AGAINST ASSIGNEE.— A note, the execution of which was authorized by a corporation for the purpose of paying another note due by it, and used for that purpose, but which was inadvertently made by its officers without signing the name of the corporation thereto, and was taken up when due by certain of the signers, is a proper claim by such signers against the corporation and its assignee in insolvency.

3. PROMISSORY NOTE — FICTITIOUS PAYEE.— One who has furnished the actual consideration for, and is the holder of, a promissory note in terms payable to another, may treat such other person as a fictitious payee, and sue thereon as upon a note payable to bearer.

4. INSOLVENT ESTATES — PRESENTATION OF CLAIMS.— In presenting claims against insolvent estates no special form of pleading is required — it is enough to show an indebtedness from the insolvent, and, if questioned, the particulars of it can be shown.   *Mitchell* v. *Powers*, 17 Or. 491, criticised on this point.

Umatilla County: MORTON D. CLIFFORD, Judge.

*Chas. H. Carter*, for objecting creditors.

*Bailey & Balleray*, for claimant creditors.

MR. JUSTICE MOORE delivered the opinion of the court:

This is a proceeding on the part of certain creditors, under section 3179 of Hill's Code, excepting to the claims presented against the estate of an insolvent debtor, and grows out of the following facts: The Pendleton Hardware & Implement Company, a private corporation, on February 6, 1891, made a general assignment for the benefit of its creditors; an assignee was appointed who duly qualified and published the required notice to creditors, who presented their claims against said estate, and among them were the following: Oregon Marble & Lime Company, for a balance on account for lime sold and delivered, four hundred and nine dollars; R. Sargent, B. Selling, J. M. Elgin, and M. J. Green, upon a note of five thousand dollars; and United States Investment Company, Limited, upon a note of six thousand dollars. The other creditors who had presented their claims against said estate excepted to the claim of the Oregon Marble & Lime Company for the reason that the insolvent debtor was incorporated for the purpose of operating a hardware and implement store, and could not deal in lime, and that the lime claimed to have been sold was a consignment for sale on account of the claimant; to the claim of R. Sargent *et al.* for the reason that said note was not given for moneys borrowed or used by the insolvent debtor, or on its account, or for its own use or benefit; and to the claim of the United States Investment Company, Limited, for the reason "that the note therein mentioned was executed and delivered without any authority, and that it does not appear that the same was executed and delivered for any debt of the insolvent company, or that any consideration was given therefor." These claimants answered the exceptions, to which the others replied, and the matter was then referred to T. G. Hailey, Esq., who took the testimony, and the court upon the hearing made an order disallowing the claim of the

United States Investment Company, Limited, from which it appeals, and allowing the claims of the Oregon Marble & Lime Company and of R. Sargent *et al.* from which the other creditors appeal.

1.  The testimony clearly shows that the lime was sold and delivered by the Oregon Marble & Lime Company to the insolvent debtor, and there is no dispute as to the amount due therefor. We do not think it necessary to pass upon the question whether the debtor could deal in lime, since the contract under which the Lime Company makes its claim had been fully executed, the lime had been delivered to and disposed of by the debtor, and the proceeds arising therefrom formed a part of its assets. The assignee holds the legal title to the property of the insolvent debtor and the fund arising from the sale thereof, for the payment of the just claims against the estate, and he can acquire no greater or better title than his assignor had; he is subject to the same duties and obligations with reference to the estate, and must pay, so far as he is able, any and all claims which could have been enforced against the debtor, if no assignment had been made. The test should be, could the claim, to which the exceptions are taken, have been enforced against the debtor. The sale of lime was not prohibited by the debtor's articles of incorporation, nor was it prohibited by statute. If no assignment had been made, the debtor could not have kept the lime and refused to pay for it because it was not hardware, nor could it keep the proceeds arising from the sale thereof. It must either return the goods or pay for them. "To say that it may retain the proceeds which have come into its possession, without making any compensation whatever to the person from whom it has obtained them, savors very much of an inducement to fraud:" Green's Brice's Ultra Vires, 2 Am. Ed. 721. There would be no equity in a rule which would permit the creditors of an insolvent estate to reap the benefit of the assets derived from such a

source and then plead that it was *ultra vires.* The debtor having received the benefit, the assignee, who stands in his place, should pay the claim as any other.

2. As the claim of R. Sargent *et al.*, the evidence shows that the insolvent debtor was incorporated with a capital stock of twenty thousand dollars, and that subscribers thereto gave their notes, amounting to twelve thousand dollars, in payment thereof; that on January 24, 1889, at a special meeting of the board of directors, a resolution was adopted which authorized the secretary to negotiate a loan not to exceed twelve thousand dollars, and the president and secretary were authorized to give the notes of the corporation and sign the same for the amounts desired, and also to deposit, as collateral security, the notes of the individual stockholders. In pursuance of this resolution, R. Sargent as president, and M. J. Green, as secretary, on September 30, 1889, borrowed from the Farmers' Savings Bank of Walla Walla, Washington, five thousand dollars, and gave the note of the corporation therefor, payable in three months; and to meet the payment of this note, one Simon Selling of Portland, Oregon, on February 20, 1890, loaned five thousand dollars, and the said president and secretary, with J. M. Elgin and B. Selling, directors of the corporation, signed a note therefor, payable in one year, but through inadvertence and mistake, omitted to sign the name of the corporation thereto. On February 21, 1890, the money received from Selling, on account of said loan, was deposited in the Pendleton National Bank of Pendleton, Oregon, and on the same day was, by check of the corporation, paid over to the Farmers' Savings Bank of Walla Walla, together with two hundred and fifteen dollars and sixty cents interest, and the note of that bank was surrendered to the insolvent debtor. When the Simon Selling note matured, R. Sargent, one of the joint makers, paid the same, and since that time B. Selling, another

joint maker, has repaid Sargent one fourth thereof. This note was presented as a claim against the estate, to which the other creditors except for the reasons heretofore given. "The liability of a principal depends upon the facts, that the act was done in the exercise and within the limits of the power delegated, and especially that it was the intent of the parties that the principal, and not the agent, should be bound": Angel and Ames, Corporations, 294. That the money was borrowed from the Farmers' Savings Bank by the corporation in the exercise and within the limits of the power delegated, and that it was the debt of the corporation, cannot be questioned. The agents of the corporation, under the resolution, were also authorized to borrow the money from Selling to repay the loan from the Farmers' Savings Bank. The parties who joined in making the Selling note pledged their credit as security therefor as much as though their stock subscription notes had been deposited as collateral security, and the evidence shows that it was the intention of the parties that the corporation should be bound as principal. "Corporations may borrow money by their syndic, but if he borrows more than he had authority for, the community is not answerable for it unless the money come to their use": Angel and Ames, Corporations, 297. The resolution of the board of directors authorized the president and secretary to deposit the stock-subscription notes as collateral security, but Selling demanded the joint note, and as the amount of the loan went to the use of the corporation, it was a loan to it, and not to the joint makers. The evidence shows that the failure to sign the name of the corporation to the Selling note was an oversight on the part of the officers, and since equity will consider that done which was intended, it follows that the note was a joint one, with the corporation as principal and the other joint makers as sureties. The second objection to this claim, that it was given in payment of stock subscriptions, is not supported

by the evidence, which conclusively shows that R. Sargent, who paid off the Selling note, had on August 1, 1889, fully paid his subscription to the capital stock of the corporation, and that he now owns three fourths and B. Selling one fourth of the Simon Selling note, which should be paid out of the assets of the estate.

3. The United States Investment Company, Limited, presented to the assignee the following claim:—

PENDLETON, Or., March 2, 1891.

Pendleton Hardware & Implement Company, to the United States Investment Company, Limited. To note dated December 7, 1890, three months, made by P. H. & I. Co. to U. S. I. Co., L., and interest to date, March 7, 1891, for money loaned at date of said note, $6,150.00.

To this claim the objecting creditors interposed the exceptions heretofore stated. The claimant, to support its claim, introduced the following note:—

"$6,000.     PORTLAND, Or., 15th Dec., 1890.

"Ninety days after date, without grace, for value received, in gold coin of the United States, we jointly and severally promise to pay to National Bank of Pendleton, or order, at the London & San Francisco Bank, Limited, in this city, the sum of six thousand dollars, with interest from date until paid at the rate of ten per cent per annum, payable monthly; both principal and interest payable in like gold coin. In case suit is instituted to collect this note or any portion thereof, we promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit.

"THE PENDLETON HARDWARE & IMPLEMENT CO.

"BENJ. SELLING.
"JACOB FRAZER.
"JESSIE FAILING.
"M. J. GREEN.
"WATSON & LUHRS.

"No. 1006.

"Endorsements as follows: July 1. Memo. note made for interest to June 20, $153.91; 12-31-91. Memo. note made for interest to 12-31-91, $326.65."

The other creditors objected to this on the ground that it was irrelevant, incompetent, and immaterial. T. F. Rourke testified that the corporation borrowed six thousand dollars from the United States Investment Company for the purpose of paying a note of similar amount in favor of the National Bank of Pendleton which was given to the latter bank for money used in the insolvent debtor's business. We think the evidence clearly shows the authority of the parties to execute the note in behalf of the insolvent debtor, that it was for money used by the corporation in its business, and the question is presented whether the claimant, in the absence of an indorsement from the National Bank of Pendleton, can treat the latter bank as a fictitious payee and recover on the note against the makers as upon a note payable to bearer. "In the case of a note payable to a fictitious person, it appears to be well settled that any *bona fide* holder may recover on it against the maker as upon a note payable to bearer": Daniel, Negotiable Instruments (4 Ed.), § 139. "When a note, however, is made payable to the name of some person not having any interest, and not intended to become a party in the transaction, whether a person of such name is or is not known to exist, the payee may be deemed fictitious. The name is assumed merely to give form to the instrument. In such case it has been adjudged that a recovery can be had on the money counts, by the actual creditor, where money passed between the parties in the action": *Foster* v. *Shattuck*, 2 N. H. 446. While the note was made payable to the National Bank of Pendleton, or order, the evidence conclusively shows that the United States Investment Company furnished the money which constituted the loan, and this fact would make it the equitable owner thereof. If the Pendleton National Bank had advanced

the money and then assigned the note without endorsement to the United States Investment Company, this fact would give it the equitable title thereto, but subject to any equities existing between the original payors and payee (Daniel, Negotiable Instruments, § 471), so that in either event the United States Investment Company was the equitable owner of the note and entitled to present the same as a claim against the estate, since no equities are attempted to be shown between the insolvent debtor and the Pendleton National Bank.

4. The objecting creditors contend that the claim of the United States Investment Company is not supported by the evidence. The original act, approved October 18, 1878, with some amendments, now constituting sections 3173, 3187, Hill's Code, was borrowed from Iowa, in which state it was held, under similar objections, that, "This being a special proceeding authorized by Code, section 2121, wherein no directions are found for pleadings, further than exceptions by creditors, and prescribing that therein the court shall proceed to hear the proofs of the parties, it is quite probable that no further pleadings are required": *In re Assignment of Guyer*, 69 Iowa, 585. Nor do we understand that this rule is changed by the opinion of Thayer, C. J., in *Mitchell* v. *Powers*, 17 Or. 491 (21 Pac. 451), in which he says: "The presentment of a claim in such a case requires more than a mere demand of a sum of money. A statement under oath of the debt or liability which is alleged to exist against the insolvent debtor should be made out and delivered or transmitted to the assignee. The creditor may not be required to state all the facts out of which the debt arose as fully as in the case of a confession of judgment; but he should set out sufficient facts to apprise the parties interested in the estate of the nature and consideration of the debt. If the debt is for money loaned or advanced, or goods sold, it should be stated, and the statement should not be limited to a specification of

the evidence of it. Persons interested in an insolvent's estate have a right to know something more than the fact that the insolvent executed to the claimant his promissory note of a certain date; they should be informed with reasonable certainty what the consideration of the claim was." The United States Investment Company allege that their claim is "for money loaned at date of said note." Claims against the estate of an insolvent debtor should rest upon their justice, and not upon the sufficiency of their allegations; and if it appear that the claimant had at the instance of the debtor, performed labor, sold and delivered goods, loaned or advanced money, such claims, upon proof, should in equity be a charge against the estate. The decree of the court below will be modified and one here entered in accordance with this opinion. MODIFIED.